## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| PAMELA M. ADLE-WATTS | : | |
| | : | |
| v. | : | Civil No. CCB-16-400 |
| | : | |
| ROUNDPOINT MORTGAGE | : | |
| SERVICING CORPORATION | : | |
| | : | |

### MEMORANDUM

Pamela M. Adle-Watts has sued RoundPoint Mortgage Servicing Corporation ("RoundPoint") and Gregory Funding, LLC ("Gregory Funding") for allegedly servicing her mortgage without entitlement, or, in the alternative, for failing to apply her mortgage payments to prevent acceleration of her loan. Now pending are the defendants' motions to dismiss. No oral argument is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, the defendants' motions to dismiss will be granted.

### BACKGROUND

On August 18, 1999, Adle-Watts obtained a mortgage loan from Headlands Mortgage Company ("Headlands") for property in Harford County, Maryland. (Compl. ¶ 6, ECF No. 2.) The mortgage was secured by a deed of trust ("deed") recorded in the Harford County land records, which listed Adle-Watts as borrower and Headlands as beneficiary and lender. (*Id.*; *id.* Ex. 1, Deed of Trust 1, ECF No. 2-1.) According to her complaint, on September 3, 1999, before assigning any mortgage servicing or other rights to any entity, Headlands assigned the deed and the corresponding mortgage note ("promissory note" or "note") to Bank One Pasadena. (Compl. ¶ 8.1; *id.* Ex. 3, 1999 Assignment, ECF No. 2-3.) On November 30, 2005, Greenpoint Mortgage Funding, Inc. ("Greenpoint"), successor-by-merger to Headlands, purportedly assigned the deed

1

and note to Copperfield Investments, LLC ("Copperfield"). (Compl. ¶ 8.2; *id.* Ex. 4, 2005 Assignment, ECF No. 2-4.) On February 9, 2011, Copperfield purportedly assigned the deed to RoundPoint. (Compl. ¶ 8.3; *id.* Ex. 5, 2011 Assignment, ECF No. 2-5.) RoundPoint was the mortgage servicer until April 20, 2015, at which point the loan servicing rights were transferred to Gregory Funding. (Compl. ¶ 7; *id.* Ex. 2, 2015 Transfer, ECF No. 2-2.) Adle-Watts alleges that, because Bank One Pasadena remained the note holder after Headlands assigned it the mortgage in 1999, all subsequent assignments and transfers are invalid. (Compl. ¶¶ 8, 8.2, 8.3.)

In light of this alleged break in the chain of title, the plaintiff filed this suit on November 23, 2015, against RoundPoint and Gregory Funding (collectively, "the defendants") in Circuit Court for Harford County, arguing that the defendants never acquired any servicing rights, or became note holders or secured parties. (*Id.* ¶ 9.) She argues that the defendants were unjustly enriched by her mortgage payments (Count I), and violated the Maryland Consumer Protection Act ("MCPA") by making misrepresentations in their communications with her (Count II), given that they were aware or should have been aware of the break in the chain of title. (*Id.* ¶¶ 9, 10, 11, 16-19, 20-30.) Adle-Watts argues in the alternative that, to the extent either defendant is a proper mortgage servicer, it wrongfully failed to accept her mortgage payments and apply them to her mortgage balance. (*Id.* ¶ 12.) Specifically, the plaintiff alleges that, in its December 29, 2014, notice of default and intent to accelerate ("notice"), RoundPoint promised that it would apply her $2,293.13 payment toward her mortgage balance to prevent acceleration of the loan. (*Id.* ¶¶ 12.1, 12.2; *id.* Ex. 6, Notice of Default, ECF No. 2-6.) Instead, RoundPoint rejected the payment on February 24, 2015. (Compl. ¶ 12.3; *id.* Ex. 9, 2015 RoundPoint Letter, ECF No. 2-9.) And according to Adle-Watts, RoundPoint and Gregory Funding have continued to improperly and without justification reject her payment attempts, and have prepared to foreclose

on her property. (Compl. ¶¶ 12.4, 12.5.) Adle-Watts has alleged an MCPA violation (Count II), detrimental reliance (Count III), breach of contract (Count IV), and negligence (Count V) as claims under this alternative theory of liability. (*Id.* ¶¶ 20-30, 31-38, 39-44, 45-51.) Adle-Watts also has included two additional causes of action, labeled as claims for a declaratory judgment (Count VI) and injunctive relief (Count VII). (*Id.* ¶¶ 52-56, 57-64.)

On February 12, 2016, the defendants removed the case to federal court, invoking this court's diversity jurisdiction. (Notice of Removal, ECF No. 1.) RoundPoint filed a motion to dismiss for failure to state a claim on March 11, 2016, (RoundPoint Mot. Dismiss, ECF No. 9), and Gregory Funding followed suit on March 18, 2016, (Gregory Mot. Dismiss, ECF No. 10). Gregory Funding incorporated by reference RoundPoint's motion to dismiss, in addition to articulating new arguments. (Gregory Mot. Dismiss at 1.) Adle-Watts filed responses in opposition to both motions, (Resp. Opp'n RoundPoint, ECF No. 13; Resp. Opp'n Gregory, ECF No. 14), and RoundPoint replied, (RoundPoint Reply, ECF No. 16).

## STANDARD OF REVIEW

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d

435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

In considering a Rule 12(b)(6) motion, the court does not always have to limit its review to the pleadings. It also can take judicial notice of public records, including statutes, and can "consider documents incorporated into the complaint by reference, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014) (citations and internal quotation marks omitted). Here, the exhibits provided by the parties are integral to the complaint.

## ANALYSIS

1. <u>Claims Related to the Alleged Break in the Chain of Title</u>

Adle-Watts brings an unjust enrichment claim and two claims under the MCPA related to the alleged break in the chain of title. The court will grant the defendants' motions to dismiss on these claims.

4

a.  *Unjust Enrichment*[1]

Adle-Watts's claim that the defendants were unjustly enriched is based on her argument

that the defendants are not entitled to enforce the terms of the note or deed. Under Maryland law,

"[t]he deed of trust cannot be transferred like a mortgage; rather, the corresponding note may be

transferred, and carries with it the security provided by the deed of trust." *Anderson v. Burson*,

35 A.3d 452, 460 (Md. 2011) (citing *Le Brun v. Prosise*, 79 A.2d 543, 548 (Md. 1951)). The

record does not demonstrate which entity is in possession of the promissory note.[2]

The court, ultimately, does not need to determine the validity of the assignments at issue.

Because Adle-Watts was not a party to or beneficiary of the assignment from Greenpoint to

Copperfield, or the subsequent transfers, she lacks standing to challenge the validity of the

assignments.[3] *See Wolf v. Fed. Nat'l Mortg. Ass'n*, 830 F. Supp. 153, 161 (W.D. Va. 2011),

*aff'd*, 512 F. App'x 336, at *342 (4th Cir. Feb. 28, 2013) ("[The plaintiff] still has the obligation

under the note to make payments. In fact, the only thing the assignment affects is to whom [she]

---

[1] "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011). Neither party contests RoundPoint's contention that Maryland law applies to Adle-Watts's claims, (RoundPoint Mot. Dismiss Ex. 1, RoundPoint Mem. Law 11, ECF No. 9-1), and all parties cite to Maryland law. Accordingly, this court will apply Maryland law.

[2] The defendants' briefs contend that the deed of trust does not determine the enforceability of the note, and that a transfer of the note automatically vests the holder with rights to the deed. (*See* RoundPoint Mem. Law 12-14; Gregory Mot. Dismiss ¶ 4.) Neither defendant, however, has demonstrated that it is in possession of the note, which, as far as the court can tell, has not been provided as part of the record. RoundPoint also claims that the plaintiff, in arguing that the defendants were not entitled to service her mortgage because they are not holders of the promissory note, improperly raises a new argument in her opposition. (RoundPoint Reply 2, 3-4.) In fact, Adle-Watts was clear in her complaint that she does not believe the defendants were ever in possession of the note. (*See, e.g.*, Compl. ¶ 8.1 (Headlands assigned the deed "and transferred the mortgage note" to Bank One Pasadena); *id.* ¶¶ 8.2, 8.3 ("Bank One Pasadena remained the sole note holder" after the purported transfers to Copperfield and RoundPoint); *id.* ¶ 9 ("[N]either defendant has ever become a note holder").)

[3] In its motion to dismiss, Gregory Funding argues that Adle-Watts lacks standing to challenge the assignments, (Gregory Mot. Dismiss ¶ 5), to which the plaintiff does not respond. Although Gregory Funding's motion was filed pursuant to Rule 12(b)(6), issues of standing are properly analyzed under the rubric of Rule 12(b)(1) for lack of subject matter jurisdiction. *See Miller v. Pac. Shore Funding*, 224 F. Supp. 2d 977, 994 (D. Md. 2002) ("[D]efendants may aptly challenge [standing's] existence by a motion to dismiss for lack of jurisdiction over the subject matter, pursuant to Federal Rule of Civil Procedure 12(b)(1)."). The party claiming subject matter jurisdiction has the burden of establishing standing to sue. *See Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009).

makes the payments. Thus, she has no interest in the assignment [and] she has no standing to challenge it."); *see also Henry v. Aurora Loan Servs., LLC*, 2016 WL 1248672, at *3 (D. Md. March 25, 2016).[4] The lack of standing makes sense because, "[r]egardless of whether the Note and Deed of Trust were properly assigned, [the borrower is] still required to make timely payments on his mortgage." *Bank of New York Mellon Trust Co. N.A. v. Henderson*, 107 F. Supp. 3d 41, 45 (D.D.C. 2015), *appeal filed*, No. 15-5186 (D.C. Cir. June 30, 2015).

Here, the deed requires Adle-Watts to make monthly payments on her mortgage. (*See* Deed of Trust 1.) It states that "[t]he Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the 'Loan Servicer') that collects monthly payments due under the Note and this Security Instrument." (*Id.* § 19.) With regard to Gregory Funding in particular, the deed provides that loan servicing rights may be transferred "unrelated to a sale of the Note," as long as the borrower is notified in writing. (*Id.*) Adle-Watts appears to allege that RoundPoint transferred only the servicing rights, not the deed or note, to Gregory Funding, (Compl. ¶ 7), and she does not contend that she was not notified of the change, (*see* 2015 Transfer). Accordingly, because she was not a party to any of the challenged assignments, and because she was required to continue making her monthly mortgage payments regardless of whether the loan servicer changed, Adle-Watts does not have standing to bring an unjust enrichment claim contesting the defendants' entitlement to enforce the deed or note. The motions to dismiss as to the plaintiff's unjust enrichment claim will be granted.

   *b.  MCPA*

Adle-Watts alleges two violations of the MCPA related to the alleged break in the chain of title. She argues that the defendants violated the MCPA: (1) when they, allegedly without

---

[4] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

entitlement, asserted the right to service her mortgage, *see* Md. Code Ann., Com. Law § 13-301(1); and (2) by claiming, attempting, or threatening to enforce a right with knowledge that the right did not exist, in violation of the Maryland Consumer Debt Collection Act ("MCDCA"), each time they threatened foreclosure or asserted a right to collect mortgage payments, *see id.* § 13-301(14)(iii). (Compl. ¶¶ 10, 11, 12.5, 25, 28.)

The MCPA prohibits commercial entities from engaging in any "unfair or deceptive trade practice" in "[t]he collection of consumer debts." Md. Code Ann., Com. Law §§ 13-101(h), 13-303(5). "To state a claim under the MCPA, plaintiffs must adequately allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 796 (D. Md. 2013) (citation omitted). The MCPA defines unfair or deceptive trade practices to include "[f]alse . . . or misleading oral or written statement[s], . . . or other representation[s] of any kind which ha[ve] the capacity, tendency, or effect of deceiving or misleading consumers." Md. Code Ann., Com. Law § 13-301(1). A violation of the MCDCA also constitutes an "unfair or deceptive trade practice" under the MCPA. *Id.* § 13-301(14)(iii). The MCDCA prohibits a debt collector from, *inter alia*, "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist" in "collecting or attempting to collect an alleged debt." *Id.* § 14-202(8). It has been interpreted to require plaintiffs to allege that defendants acted "with actual knowledge or reckless disregard as to the falsity of the information or the existence of the right." *Spencer v. Hendersen-Webb, Inc.*, 81 F. Supp. 2d 582, 595 (D. Md. 1999). The MCDCA's private right of action is predicated on recovery of "damages proximately caused by" a violation of the statute. Md. Code Ann., Com. Law § 14-203. MCPA claims are subject to the heightened pleading standard of Rule 9(b). *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) ("[T]he MCPA

claim, which sounds in fraud, is subject to the heightened pleading standards of [Rule 9(b)].").

Regarding her claim that the defendants violated Section 13-301(1) when they asserted the right to service her mortgage, Adle-Watts cannot demonstrate "actual injury" under the MCPA. In particular, the deed of trust explicitly states that Adle-Watts is required to make monthly payments toward her mortgage regardless of her loan servicer's identity, (Deed of Trust 1, § 19), and there is no evidence that she was ever required to make monthly payments to more than one servicer. *Cf. Howes v. Wells Fargo Bank, N.A.*, 2015 WL 5836924, at *26 (D. Md. Sept. 30, 2015), *appeal docketed*, No. 15-2332 (4th Cir. Oct. 29, 2015) (favorably citing to a case that held that, "in the absence of two masters claiming ownership of the note," it was reasonable to infer that the servicing rights on the plaintiff's debt belonged to the mortgage servicer attempting to collect payments). Adle-Watts has not shown that her obligations would have been any different had any alleged improper assignments of the note or deed of trust not occurred. Accordingly, the defendants' motions to dismiss her claim that they violated Section 13-301(1) of the MCPA in servicing her mortgage will be granted.

For the same reasons she cannot show "actual injury," Adle-Watts also cannot meet the MCDCA's requirement of demonstrating that she suffered "damages proximately caused by" a violation of that statute. *See* Md. Code Ann., Com. Law § 14-203. Beyond that, even assuming the defendants did not possess the promissory note, the court is not convinced that Adle-Watts has shown, especially under the heightened pleading standard of Rule 9(b), that the defendants acted with "actual knowledge or reckless disregard" that the debt was invalid. *Spencer*, 81 F. Supp. 2d at 595. In particular, "the MCDCA allows for recovery against creditors that attempt to collect debts when there is no right to do so. It does not, as the Plaintiff[ ] appear[s] to contend, allow for recovery in errors or disputes in the process or procedure of collecting legitimate,

8

undisputed debts." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 318 (D. Md. 2014) (alteration in original) (quoting *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 596 (D. Md. 2013)); *see also Stewart v. Bierman*, 859 F. Supp. 2d 754, 758, 770 (D. Md. 2012). As the court will address, Adle-Watts alleges that the defendants failed to apply the payment she sent in response to RoundPoint's December 29, 2014, notice, but she does not contest the content of the notice, which stated she was behind in her monthly mortgage payments. (*See* Resp. Opp'n RoundPoint 4.) Accordingly, the defendants' motions to dismiss her MCPA claim that is based on an alleged violation of the MCDCA will be granted.

2.  Claims of Alternative Liability

Adle-Watts argues in the alternative that, to the extent either defendant is a proper mortgage servicer, it wrongfully failed to accept her mortgage payments and apply them to her mortgage balance. (Compl. ¶ 12.) She brings negligence, MCPA, breach of contract, and detrimental reliance claims under this theory of liability. None will survive the motions to dismiss.

a.  *Negligence*

In Maryland, causes of action based on negligence require the plaintiff to prove that she was owed a duty. *See Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 250 (D. Md. 2013) (citation omitted). "The mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986). In cases of economic loss only, the imposition of tort liability generally requires "an intimate nexus between the parties" that is satisfied "by contractual privity or its equivalent." *Id.* at 759-60. "Absent special circumstances, the court is reluctant to transform an ordinary contractual relationship

between a bank and its customer into a fiduciary relationship or to impose any duties on the bank not found in the loan agreement." *Green*, 927 F. Supp. 2d at 250 (citations omitted).

Adle-Watts points to *Jacques* to argue that, assuming the defendants are proper mortgage servicers, a sufficient nexus is presented here by virtue of the note, deed, and notice, and by her particular vulnerability as a borrower in distress.[5] (*See* Compl. ¶¶ 46, 48; Resp. Opp'n RoundPoint 5-6.) This argument is unavailing. Even assuming the loan documents create a relationship between the defendants and the plaintiff, courts consistently have construed the *Jacques* duty to be a narrow one, and, in particular, found that "a mortgage servicer does not owe a tort duty to its loan customer." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 274 (D. Md. 2015) (citation omitted); *see also Spaulding v. Wells Fargo Bank, N.A.*, 920 F. Supp. 2d 614, 621 (D. Md. 2012) ("The United States Court of Appeals for the Fourth Circuit has interpreted [the *Jacques*] exception to apply only to vulnerable parties." (citing *Lawyers Title Ins. Corp. v. Rex Title Corp.*, 282 F.3d 292, 293-94 (4th Cir. 2002)). Here, Adle-Watts has "failed to allege sufficient special circumstances creating a fiduciary relationship under *Jacques*." *Ayres*, 129 F. Supp. 3d at 275. Accordingly, the defendants' motions to dismiss her negligence claim will be granted.

    b.  *Claims Surrounding RoundPoint's December 29, 2014, Notice: MCPA, Breach of Contract, & Detrimental Reliance*

Adle-Watts argues that, if the defendants are proper mortgage servicers, they wrongfully failed to accept the $2,293.13 she sent by the deadline provided in RoundPoint's December 29, 2014, notice of default. (Compl. ¶ 12; *id.* Ex. 7, Adle-Watts's Payment, ECF No. 2-7; *id.* Ex. 8,

---

[5] The court notes that Adle-Watts's attorney was the plaintiffs' counsel in *Green*, and the court in that case observed that he had "filed negligence and negligent misrepresentation claims in this district in a number of cases very similar to this one, and courts considering such claims have generally found them subject to dismissal because the defendants did not owe a tort duty to the plaintiffs." 927 F. Supp. 2d at 250.

USPS Tracking Record, ECF No. 2-8.) RoundPoint returned her payment because it was less than the total amount she owed—$4,706.77—when RoundPoint received the money order. (*Id.* Ex. 9, RoundPoint Return Letter 1, ECF No. 2-9.) Adle-Watts's third MCPA claim, and her breach of contract and detrimental reliance claims, are all based on these allegations.

As an initial matter, Gregory Funding cannot be held liable for these claims. The only allegation in the complaint that is specific to Gregory Funding is that the loan servicer has continued to reject Adle-Watts's mortgage payments, allegedly without justification. (Compl. ¶¶ 12.4, 36.) The plaintiff, however, has offered only conclusory statements to support these allegations. She attached to her complaint a September 9, 2015, notice of intent to foreclose that she received from Gregory Funding. (*Id.* Ex. 10, Foreclosure Notice 1, ECF No. 2-10.) The notice indicated that Gregory Funding applied a payment it received from Adle-Watts on June 5, 2015, to the February 2015 pay period; that Adle-Watts was in default as of March 2, 2015; and that the total amount required to cure the default as of the date of the notice was $9,059.27. (*Id.*) There is nothing in the complaint to indicate that this information is incorrect, or to explain how this notice is connected to the loan servicers' allegedly improper actions arising from RoundPoint's December 29, 2014, notice. All other allegations against Gregory Funding stem purely from its role as successor loan servicer to RoundPoint. (*See, e.g.*, Compl. ¶ 7 ("The purported assignment [from RoundPoint to Gregory Funding] was subsequent to RoundPoint's wrongful conduct as alleged herein, thus Gregory Funding assumed any of RoundPoint's obligations that ran with the mortgage."); Resp. Opp'n Gregory 3 ("Gregory Funding stepped into RoundPoint's shoes when it became the subsequent mortgage servicer. . . . Since RoundPoint was required to accept Ms. Adle-Watts' payments, Gregory Funding was required to accept the payments.").) Under Maryland law, however, an assignee has no affirmative liability

to an obligor for an assignor's misconduct. *See Brown v. Bank of Am., N.A.*, 2012 WL 380145, at *4 (D. Md. Feb. 3, 2012); *P/T Ltd. II v. Friendly Mobile Manor, Inc.*, 556 A.2d 694, 697 (Md. Ct. Spec. App. 1989). Accordingly, Gregory Funding is not liable for RoundPoint's alleged misconduct related to the December 29, 2014, notice.

Even if Gregory Funding could be held liable, however, Adle-Watts's allegations regarding the December 29, 2014, notice are not enough to overcome the motions to dismiss. Regarding her breach of contract claim, the plaintiff argues that RoundPoint's notice was an offer supported by adequate consideration, which she accepted, and RoundPoint's refusal to accept her payment was a material breach of that contract. (Compl. ¶ 40.) Under Maryland law, consideration may consist of "a benefit to the promisor or a detriment to the promisee." *Cheek v. United Healthcare of Mid–Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003) (internal quotation marks omitted). Past consideration, however, will not support a new agreement. *See Wickman v. Kane*, 766 A.2d 241, 246 (Md. Ct. Spec. App. 2001). Assuming, as she does under these claims, that the defendants were proper servicers, Adle-Watts's pledge to pay amounts she already owed under the original mortgage agreement does not constitute new consideration to support enforcement of RoundPoint's notice. *See Glenwood Range Co. v. Universal Major Elec. Appliances, Inc.*, 124 F. Supp. 103, 117 (D. Md. 1954) (noting that, generally, "a debtor incurs no legal detriment and a creditor receives no benefit when the debtor pays that which he already owes"); *Wickman*, 766 A.2d at 246 (explaining that "payment of a claim or debt that one already is obligated to pay, when the claim or debt is due and owing, ascertainable in amount, and not controverted, will not serve as consideration for an accord"). Accordingly, RoundPoint's notice is not an enforceable contract, and the defendants' motions to dismiss Adle-Watts's breach of contract claim will be granted.

Adle-Watts's MCPA and detrimental reliance claims also are not plausible. Adle-Watts alleges that the defendants violated Section 13-301(1) of the MCPA when they promised, allegedly without an intent to keep that promise, that her payment would be applied toward her mortgage to prevent acceleration of her loan. (Compl. ¶¶ 12, 26.) The court already has identified the elements of an MCPA claim. For her detrimental reliance claim, Adle-Watts alleges that she justifiably relied to her detriment on the notice by making the stated payment, not restructuring her debt under Chapter 13 of the bankruptcy code, not submitting to foreclosure, or not pursuing loss mitigation options. (*Id.* ¶ 34.) To succeed on a claim of detrimental reliance, also known as promissory estoppel, a plaintiff must prove: "1. a clear and definite promise; 2. where the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee; 3. which does induce actual and reasonable action or forbearance by the promisee; and 4. causes a detriment which can only be avoided by the enforcement of the promise." *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996). "Promissory estoppel offers a vehicle to enforce a promise for which there is no consideration, but the plaintiff nonetheless relied upon the promise to his detriment in circumstances that make it unconscionable not to enforce the promise." *Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 440 (4th Cir. 2001). "A party may bring an action seeking both breach of contract and promissory estoppel, because if the court finds that the contract is unenforceable it may nonetheless provide relief based on detrimental reliance." *J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 609 (D. Md. 2015) (citation omitted).

Although the second page of the notice directs the recipient to call RoundPoint "[t]o obtain the exact amount needed to bring the mortgage current and cure this default," the first page states that Adle-Watts "may avoid foreclosure by . . . [making] payment in the amount of

$2,293.13 by 2/19/2015." (RoundPoint Mot. Dismiss Ex. 2, Notice of Default 1, 2, ECF No. 9-2.)[6] Any ambiguity in the notice, however, does not excuse Adle-Watts's failure to continue making any monthly payments that were due between the date of the notice and the date the $2,293.13 was due. (*See* Deed of Trust § 1). Again, therefore, the plaintiff cannot allege "actual injury" under the MCPA. For the same reason, any reliance by Adle-Watts was not sufficiently reasonable to make out a claim for detrimental reliance. Further, there is no evidence to support the conclusion that not enforcing the alleged promise would be "unconscionable." *Edell & Assocs.*, 264 F.3d at 440. In fact, as far as the court can tell based on the record in the case, Gregory Funding (and not RoundPoint) did not attempt to foreclose on the property until September 2015, nine months after RoundPoint's notice. (Foreclosure Notice 1.) Accordingly, Adle-Watts's claims of alternative liability will be dismissed.

3.   Declaratory Judgment & Injunctive Relief

    In counts VI and VII of her complaint, Adle-Watts requests that this court issue a declaratory judgment articulating the defendants' obligations and an injunction requiring the defendants to apply her payments toward the mortgage balance. (Compl. ¶¶ 52-64.) Ultimately, however, Adle-Watts has demonstrated no actionable claims for the wrongs she has alleged. *See Miller*, 224 F. Supp. 2d at 993 ("Thus, in seeking a declaratory judgment—just as in seeking any other remedy—a plaintiff must state a claim upon which relief can be granted."). Accordingly, there is no basis for entering either the declaratory or injunctive relief she requests in counts VI and VII of her complaint.

**CONCLUSION**

    For the reasons stated above, the defendants' motions to dismiss will be granted. A

---

[6] Adle-Watts only included the first page of the notice in the exhibit attached to her complaint. She does not, however, contest the authenticity of the notice's second page, which RoundPoint attached to its motion to dismiss. (*See* Resp. Opp'n RoundPoint 4.)

separate order follows.


_____7/13/16_____                    _____/S/_____
Date                                     Catherine C. Blake
                                         United States District Judge